MARTIN RYERSON ET AL. v. CITY OF MUSKEGON.

*Taxation of logs in camp.*

Logs in camp are taxable where the camp is, if there is an office there and buildings for transacting the local business, receiving funds and making returns to headquarters. 1 How. Stat., p. 1267, § 11, subd. 1.

Error to Muskegon.   (Russell, J.)   June 10.—June 17.

ASSUMPSIT.   Defendant brings error.   Affirmed.

*Cook, DeLong & Fellows* for appellant, cited as to the place of taxation, *Putman v. Fife Lake* 45 Mich. 125; *McCoy v. Anderson* 47 Mich. 502.

*Norris & Uhl* and *M. J. Smiley* for appellee.

CAMPBELL, J. Plaintiffs sued defendant to recover back taxes paid under protest upon logs assessed in Muskegon, but actually held by plaintiffs in Clare and Newaygo counties. The facts are not disputed, but there is a controversy whether the property in Clare and Newaygo should be held for taxing purposes, as liable to taxation in the city of Muskegon, where plaintiffs have a business office.

The case showed that plaintiffs' principal business office in Michigan is in the city of Muskegon, in the First ward, where this assessment was made. At that time the firm had in and near Muskegon, or outside of any of their local establishments, about nine and a half millions of logs, which they gave in as taxable there. They had in Newaygo county a camp known as "Camp Three," and about that camp they had 7,592,837 feet. In the same county was Camp Jacobs, with about 10,000,000 feet. At Camp Bagley, in Clare county, they had a little over 8,000,000; and a few thousand feet at their mill in Laketon, Muskegon county.

Their lumber market was Chicago, in the state of Illinois, where sales and collections were made. Their financial headquarters were in Muskegon, which was the place where the general accounts were kept. The logs were cut into lumber chiefly at mills on Muskegon lake.

The only question is whether the logs at the camps in the other counties were assessable in Muskegon. For if not, we think there was a want of jurisdiction, which would make the assessments as to them void, as beyond the right of the city officials to deal with at all.

Our taxing laws have so far changed the rule of holding personalty present at the residence of its owner, as to make it taxable where it is found, if connected there with some fixed local establishment. This rule was found necessary to secure to localities where property is located and protected,

the right to make it subject to local taxation. This is the rule where goods and chattels are actually situate in some township, where the owner or person in charge "hires or occupies a store, mill, place for sale of property, shop, office, mine, farm, storage, manufactory or warehouse therein, for use in connection with such goods and chattels." 1 How. Stat. p. 1267.

The case shows that each of the camps named has connected with it, in order to carry on logging operations, in the region dependent upon it, an office, store, blacksmith shop, slaughter-house, boarding-houses, barns and outhouses; that the local superintendents purchased their own supplies, superintended and paid the men, kept accounts of the cutting and scaling, sold goods to the men and to others, and settled most of the local supply bills, and the local business, receiving funds, and making returns each year to head-quarters.

We think that the office and other buildings were used in connection with the logs which came from these camps, as plainly as the Muskegon buildings were used in connection with the lumber shipped thence to Chicago, and that the logs held there at the time of the assessment were assessable at those offices, and not at Muskegon, until sent forward from where they were lying gathered as the product of those camps. The logs may or may not be intended to be sold as logs, or to be worked up into lumber. This does not seem to be important under the statute. The ore product of mines is seldom sold at the mines, and is sometimes retained and reduced to metal by the mine-owners themselves, before placed on the market. But this would not, under the statute, prevent taxation at the mine. The statute for purposes of taxation looks chiefly to see whether there is a local establishment with which the property is, for any substantial purpose, connected. The logging camps, such as are described in this record, seem to us to have such a connection with the logs cut and prepared for moving under their management.

We need not dwell upon the legal questions at length, as several decisions have been made involving similar consider-

ations.    This case appears to us free from difficulty, and manifestly within both letter and spirit of the statute.

The judgment should be affirmed.

COOLEY, C. J. and SHERWOOD, J. concurred.    CHAMPLIN, J. did not sit.